IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JASON SCOTT MUNIZ, § | |
|     Petitioner, § | |
| § | |
| vs. § | C.A. NO. C-06-351 |
| § | |
| NATHANIEL QUARTERMAN, § | |
| Director, Texas Department of § | |
| Criminal Justice, Correctional Institutions § | |
| Division, § | |
|     Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the Dominguez Unit in Huntsville, Texas. Proceeding *pro se*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 (D.E. 1). The underlying conviction which is the subject of the petition is a 2005 Live Oak County conviction for the felony offense of aggravated assault with a deadly weapon. Petitioner argues that (1) he was denied effective assistance of counsel and (2) although he pleaded guilty he did so unwillingly and without a full understanding of the consequences. On September 28, 2006 respondent filed a motion for summary judgment to which petitioner did not respond (D.E. 4).

## BACKGROUND

**A. Facts**

According to a victim report submitted in petitioner's case, a 22-year-old man was asleep in his house when petitioner entered the room, put his hand over the victim's nose and mouth and held a machete to his neck. The victim clearly saw petitioner, whom he knew. The victim

knocked petitioner's hand away from his mouth and called to his roommate for help. The roommate arrived and during a scuffle the machete fell from petitioner's hand. The roommate called the police and the victim threw the machete into another room. Petitioner told the victim that he thought he was someone else and said he would never bother him again if the victim would agree to not make a police report. At some point before the police arrived, petitioner left through the back door of the house. Record at 28.[1]

### B. Procedural Background

Following a plea of no contest, petitioner was convicted of aggravated assault by threat with a deadly weapon in the 156th Judicial District Court of Live Oak County, Texas, in Cause No. L-04-0033-CR-B, styled The State of Texas v. Jason Scott Muniz (Ex Parte Muniz, App. No. WR-64,066-01 at 20). There was an affirmative finding of use of a deadly weapon (Id.). The court requested that a presentence investigation be conducted and following the completion of the report a punishment hearing was held in front of the trial court, which imposed a seven-year sentence in TDCJ-CID on petitioner (Id. at 20-21).

Petitioner filed an appeal with the Thirteenth Court of Appeals but then voluntarily dismissed the appeal on the advice of counsel. Muniz v. State, No. 13-05-179-CR (Tex.App.–Corpus Christi, May 19, 2005). See also Ex Parte Muniz, App. No. WR-64,066-01 at 3, 8. Petitioner next filed an application for habeas relief in state court alleging that his attorney had provided ineffective assistance of counsel and that he entered the guilty plea without understanding all of the consequences. Ex Parte Muniz, App. No. WR-64,066-01 at 2-18.

---

[1]"Record" refers to the clerk's record prepared in petitioner's state court direct appeal and is located at D.E. 5, along with the other state court records.

The state trial court ordered Ruben Lerma, the attorney who represented petitioner at trial, to submit an affidavit regarding his representation of petitioner and addressing the particular issues raised by petitioner. Id. at 27-28. Lerma did so on February 21, 2006. Id. at Supp/Clerk Record. The Texas Court of Criminal Appeals denied the application without written order on March 22, 2006. Id. at cover.

Petitioner next filed his application for habeas relief in this court on August 10, 2006. In his motion for summary judgment, respondent argues that petitioner's trial counsel rendered effective assistance and cites in support the affidavit submitted by attorney Lerma.

## APPLICABLE LAW

### A. AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000).

Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523). A federal court has no authority to grant habeas corpus relief simply because it concludes in its independent judgment that a state court's judgment is erroneous or incorrect. Neal, 239 F.3d at 687. In determining whether a state court decision in a habeas case is reasonable, the focus is on the ultimate legal conclusion reached by the state court and not on whether the state court considered and discussed every angle of the evidence. "[T]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" Neal, 239 F.2d at 696 (citing Hennon v. Cooper, 109 F.3d 330, 334-335 (7th Cir. 1997)).

The Texas Court of Criminal Appeals denied petitioner's application without written order. In Texas writ jurisprudence, a denial of relief rather than "dismissal" of a claim by the Court of Criminal Appeals generally disposes of the merits of a claim. Singleton v. Johnson, 178 F.3d 381, 384 (5th Cir. 1999). Accordingly, petitioner must show that the denial of habeas relief in state court was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

**B.  Ineffective Assistance of Counsel**

Petitioner argues that his counsel was ineffective for a number of reasons: (1) He misrepresented to petitioner that he would receive probation if he entered an "open plea" to the trial judge when in reality he was not eligible for a probated sentence because the indictment contained a "deadly weapon" allegation; (2) His attorney never returned his telephone calls; (3) Although the petitioner repeatedly told his attorney that he was not guilty, his attorney would only tell petitioner that if he did not plead guilty he faced a possible life sentence; (4) When he told his attorney that he wanted to confront his accusers in court and prove they were lying, his attorney told him that the jurors were all white and would assess a much greater sentence than the judge if he went to trial; (5) Petitioner's attorney was not prepared for trial and this knowledge caused petitioner to plead guilty to the charges and throw himself on the mercy of the court; (6) During the hearing on punishment, petitioner's attorney refused to call witnesses or introduce petitioner's military records; (7) His attorney refused to file an appeal on petitioner's behalf.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  Id., 466 U.S. at 687-8, 104 S.Ct. at 2064.  Petitioner must show "significant prejudice" in a noncapital context.  Armstead v. Scott, 37 F.3d 202 (5th Cir. 1994), cert. denied, 115 S.Ct. 1709, 131 L.Ed. 2d 570 (1995)(citing Spriggs v. Collins, 993 F.2d 85, 88, n. 4. (5th Cir. 1993)).

5

Prejudice in this context means that the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

When a defendant knowingly and willingly enters a guilty or "no contest" plea he waives most of his other claims except for his claims of ineffective assistance of counsel:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).  The law relating to guilty pleas applies to pleas of nolo contendere.  Matthew v. Johnson, 201 F.3d 353, 360, n. 9 (5th Cir. 2000)(citing Carter v. Collins, 918 F.2d 1198, 1200 n. 1 (5th Cir. 1990)).

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the courses of action open to the defendant.  Matthew, 201 F.3d at 364 (citing Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).  When a court assesses the validity of a guilty plea it looks to all of the relevant circumstances surrounding it.  Matthew, 201 F.3d at 364-365 (citing Brady v.United States, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469 (1970)).

A defendant pleading guilty must be competent and must have notice of the nature of the charges against him.  The plea must be entered voluntarily and not be the product of actual or threatened physical harm or mental coercion overbearing the will of the defendant.  Nor can the plea be the result of state-induced emotions so intense that the defendant was rendered unable to

weigh rationally his options with the help of counsel.  Matthews, 201 F.3d at 365 (citing Henderson v. Morgan, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed.2d 859 (1941); Brady, 397 U.S. at 750, 90 S.Ct. 1463 and Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 91962).  In addition, the defendant must understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  Matthew, 201 F.3d at 365 (citing Henderson, 426 U.S. at 645, n. 13, 96 S.Ct. 2253; Brady, 397 U.S. at 755, 90 S.Ct. 1263 and Machibroda, 368 U.S. at 493, 82 S.Ct. 510).  Finally, the defendant must have available the advice of competent counsel which acts as a safeguard to ensure that pleas are voluntarily and intelligently made.  Matthew, 201 F.3d at 365 (citing Tollett, 411 U.S. 258 at 268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973);  Brady, 397 U.S. at 756 and McMann v. Richardson, 397 U.S. 759, 771 & n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

When a petitioner asserts that his attorney's ineffective assistance caused him to enter a guilty plea either unwillingly or without understanding the consequences of his plea, he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370 (1985).  Typically, in order to show that the error prejudiced the defendant, the court must make a prediction about what the outcome of the trial would have been had counsel done the things that petitioner now urges.  Id.  In the non-capital sentencing context, the petitioner must demonstrate that the sentence he received would have been "significantly less harsh" but for the deficient performance of his attorney.  Spriggs, 993 F.2d at 88.  The court must consider the following: (1) the sentence imposed in the case; (2) the minimum and

maximum sentence allowed by law; (3) the placement of the sentence within the allowable range and (4) any mitigating or aggravating factors considered by the trier of fact. Id, 993 F.2d at 88-89.

As discussed above, petitioner argues that his attorney was ineffective in a number of ways, each affecting the voluntariness of his plea. The arguments will be addressed in turn.

**(1) Misrepresentation of Probation Eligibility**

Petitioner asserts that his attorney told him that he would be eligible for probation if he pleaded guilty but that he actually was ineligible for probation because the indictment alleged that the offence involved use of a deadly weapon. He claims his attorney assured him that the District Attorney's office said he would receive a probated sentence and also that the judge would give him probation because both petitioner and the judge's wife are Hispanic. Petitioner argues that he would not have pleaded guilty had he known he was not eligible to receive a probated sentence.

Lerma stated in the affidavit he submitted to the state court that he explained to petitioner that he could plead guilty and ask that either the judge or a jury assess his punishment. If the jury assessed punishment, they could give him a probated sentence or send him to prison, but he would have a conviction on his record.

If he asked the judge to assess punishment, the judge could give him deferred adjudication probation and if he successfully completed the terms of his probation the charges would be dismissed and he would have no final conviction on his record. Lerma stated that he further explained that although the judge had the option of deferring petitioner's guilt or finding him guilty and assessing a prison sentence, he could not award straight or regular probation if he

found him guilty because of the deadly weapon finding.[2] Ex Parte Muniz, App. No. WR-64,066-01, Supp/Clerk Record.

Lerma also said that in addition to explaining to petitioner and his family the ramifications of use of a deadly weapon, he explained the advantages and disadvantages of having petitioner testify at the trial. He described the evidence he thought the State would submit and said that he could not anticipate the outcome of a trial. Petitioner and his family were concerned about how his ethnicity would affect his ability to have a fair trial and after the jury was picked petitioner was not happy with its racial makeup. Petitioner told Lerma he wanted to plead guilty if he could be assured that he would receive probation. Lerma explained that deferred adjudication could only be awarded by the judge and further explained that the plea was "open" regarding punishment. Id.

During the hearing on the plea agreement the trial judge explained to petitioner that he could find petitioner guilty, but could not then grant him community supervision because of the deadly weapon finding. However, if he deferred adjudication of the charges pending against petitioner, he could suspend any sentence petitioner might receive. The judge confirmed that he could, in theory, grant petitioner as little as two years community supervision on a finding of deferred adjudication (Tr. of Plea agreement at 11-12).

Based on the record, petitioner cannot show that the Texas Court of Criminal Appeals was unreasonable when it found that Lerma was not ineffective for explaining that petitioner

---

[2]This is a correct reading of Texas law. Under the Texas Code of Criminal Procedure, Art. 42,12, Sec. 3g, a trial judge cannot suspend the imposition of a sentence when a defendant is guilty and has been found to use or exhibit a deadly weapon. But under Art. 42.12, Sec. 5(a) a judge may defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision.

*could* receive a probated sentence from the judge, because it was an accurate representation of the law. Regarding petitioner's claim that his attorney assured him that the judge *would* defer adjudication, it is contradicted by Lerma's affidavit stating that he explained all the possible outcomes to petitioner. The Court of Criminal Appeals' determination that Lerma's explanation regarding petitioner's plea choices was more credible than petitioner's explanation is supported by evidence in the record and petitioner has not presented evidence or argument to show that such a determination was unreasonable. Accordingly, summary judgment should be entered for respondent on this issue.

**(2) Telephone Calls**

Petitioner argues that his attorney was ineffective because he never returned his telephone calls. Lerma stated that he called petitioner on a regular basis and spoke to petitioner's mother but that petitioner rarely returned his calls. In addition, Lerma stated that petitioner missed scheduled appointments and became more difficult to contact when he began to work in another county. Ex Parte Muniz, App. No. WR-64,066-01, Supp/Clerk Record. Given Lerma's affidavit, it was not unreasonable for the Court of Criminal Appeals to find that Lerma's attempts to stay in contact with petitioner were consistent with effective assistance of counsel.

**(3) Willingness to Go To Trial (Petitioner's third and fourth arguments)**

Petitioner asserts that he was not guilty and he wanted an opportunity to go to trial and show that his accusers were lying, but that Lerma kept repeating that the jurors were all white and non-Hispanic and that he would receive a harsher penalty from them if he went to trial. Lerma refuted petitioner's assertions in his affidavit and stated that he relayed to petitioner the results of the conversations he had had with the witnesses and his theory of cross-examination

for each witness.  He explained the strengths and weaknesses of plaintiff's case but above all explained that he could not predict with any certainty the outcome of the case.  Ex Parte Muniz, App. No. WR-64,066-01, Supp/Clerk Record.

Petitioner cannot show that the Texas Court of Appeals' decision to credit Lerma's testimony over that of petitioner is unreasonable in light of the record.  Moreover, to show prejudice, petitioner must demonstrate that the sentence he received would have been "significantly less harsh" but for the deficient performance of his attorney.  Spriggs, 993 F.2d at 88.  Petitioner has made no attempt to show who would have testified on his behalf to refute the accusations against him or what they would have said.  He has not offered any evidence to support his allegation that had he gone to trial he would have received a sentence significantly less harsh than seven years.  His conclusory allegation that the outcome of a trial would have been better for him is an insufficient basis on which to grant habeas relief.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else in the record, to be of probative evidentiary value."  Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983).  Accordingly, respondent is entitled to summary judgment on this issue.

### (4) Attorney Not Prepared for Trial

Petitioner asserts that he knew that Lerma was not prepared for trial on the day it was set and that because he was scared and confused, he agreed to plead guilty and throw himself on the mercy of the court.  Lerma asserts that he was prepared for trial and in particular states that he had interviewed all the witnesses, had met with police officers to inspect the machete, had spoken with the alleged victim, had been to the scene of the crime and had prepared his client

and his client's mother to testify. In addition, on the day of trial he had prepared a jury charge and had picked and seated a jury. Ex Parte Muniz, App. No. WR-64,066-01, Supp/Clerk Record.

Petitioner offers nothing to counter Lerma's assertions and does not describe any further investigation that should have been done or otherwise explain how the attorney was not prepared for trial. Without more, petitioner cannot show that Lerma was so unprepared for trial that he rendered ineffective assistance of counsel. Accordingly, summary judgment should be entered for respondent.

### (5) Punishment Hearing

Petitioner asserts that during the punishment hearing he wanted his attorney to call witnesses favorable to him and to introduce his favorable military records but his attorney did not do so. Lerma stated that he did not introduce petitioner's military records because they contained information about an assault that occurred while he was in the military and also because he was dishonorably discharged. The attorney called petitioner's mother and brother to testify on his behalf at the punishment hearing.

Regarding the decision to not introduce the military records, "'[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Lave v. Dretke, 416 F.3d 373, 380 (5th Cir. 2005)(citing United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)). Counsel's decision to not admit the military records was a strategic decision based on a desire to avoid showing petitioner had been dishonorably

discharged from the military and had been involved in an assault.  Petitioner's claim that it constituted ineffective assistance of counsel is without merit.

Regarding petitioner's claim that he wanted his attorney to call other witnesses for him, petitioner does not identify the people he wanted to have testify at the punishment hearing, does not provide any affidavits from any of the witnesses regarding their testimony and does not describe what their testimony would have been.  Petitioner's conclusory speculation about the effect of the unidentified favorable witness' testimony falls far short of the prima facie showing of prejudice necessary to show ineffective assistance of counsel.  Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001)(citing United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983)).  Accordingly, his argument regarding counsel's failure to subpoena favorable witnesses is without merit.

### (6) Appeal

Petitioner claims that he asked Lerma to file an appeal on his behalf but Lerma told him that he had to do it himself.  Lerma stated that he informed petitioner and his brother that Lerma could inform the court that he wanted to appeal or that petitioner could do it himself.  In addition, Lerma explained to petitioner's brother that if petitioner obtained a new trial he would be subject to the entire range of punishment.  Lerma said he never heard back from petitioner or his family.

Even if Lerma understood that petitioner wanted him to file an appeal and failed to do so, petitioner has not shown any prejudice, because he filed a timely appeal and then dismissed it on the advice of counsel.  Without an allegation of prejudice petitioner cannot prevail on his claim of ineffective assistance of counsel for failure to appeal.

**C. Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it

14

debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

## **RECOMMENDATION**

It is respectfully recommended that respondent's motion for summary judgment (D.E. 4) be GRANTED. Petitioner's application for habeas corpus relief should be DISMISSED with prejudice. It is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 30th day of November, 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>Douglass v. United Services Auto Ass'n</u>, 79 F.3d 1415 ( 5th Cir. 1996) (en banc).